## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **MICHAEL CHAMBERS**, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civ. Act. No. 06-771-JJF |
| | : | |
| **RAPHAEL WILLIAMS**, | : | |
| Warden, and **JOSEPH R. BIDEN, III**, | : | |
| Attorney General for the State of Delaware, | : | |
| | : | |
| Respondents. | : | |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

In September 2006, the petitioner, Michael Chambers, acting *pro se* with standby counsel, was convicted by a Delaware Superior Court jury of possession with intent to deliver cocaine, use of a dwelling for keeping controlled substances, possession of a firearm during the commission of a felony, and possession of a non-narcotic controlled substance. *See State v. Chambers*, 2007 WL 92625, *1 (Del. Super. Ct. Jan. 11, 2007). In November 2006, Chambers moved for a new trial or acquittal of the judgment. *See* Del. Super. Ct. Crim. Dkt. at Item 37 (hereinafter "Crim. Dkt. at __"). After receiving a response from state prosecutors, the trial judge denied Chambers' motion. *See Chambers*, 2007 WL 92625 at *1. In January 2007, Chambers was sentenced as an habitual offender pursuant to DEL. CODE ANN. TIT. 11, § 4214(a) to twenty-five years of incarceration, followed by three years at decreasing levels of supervision.

*See* Crim. Dkt. at Items 48-49. Chambers did not appeal his conviction or sentence. Chambers' federal habeas petition is dated December 3, 2006.

## Discussion

In his petition for federal habeas relief, Chambers raises three grounds for relief: (1) Chambers was brought to Delaware from New Jersey in violation of the Interstate Agreement on Detainers; (2) newly discovered evidence of a recantation by Jasmine Pruden requires reversal of Chambers' convictions; and (3) blacks were systematically excluded from the jury pool and jury in violation of *Batson v. Kentucky,* 476 U.S. 79 (1986). D.I. 1 at 5-6; D.I. 5.

A state petitioner seeking federal habeas relief must first exhaust remedies available in the state courts. 28 U.S.C. § 2254(b); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Rose v. Lundy*, 455 U.S. 509, 515 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Alston v. Redman*, 34 F.3d 1237, 1241-42 (3d Cir. 1994). In order to demonstrate that a claim has been exhausted in state court, a petitioner "must show that he presented each claim to the Delaware Supreme Court." *Bailey v. Snyder*, 855 F. Supp. 1392, 1399 (D. Del. 1993); *see also Picard*, 404 U.S. at 275; *Stevens v. Delaware Corr'l Center*, 295 F.3d 361, 369 (3d Cir. 2002); *Lines v. Larkin*, 208 F.3d 153, 160 (3d Cir. 2000); *Burkett v. Love*, 89 F.3d 135, 138 (3d Cir. 1996); *Toulson v. Beyer*, 987 F.2d 984, 986 (3d Cir. 1993). The habeas petitioner must afford each level of the state courts a fair opportunity to address the claims. *See Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir. 1993). Further, Chambers must have presented to the state courts the same legal and factual basis of each claim he presents to the federal habeas court. *See* 28 U.S.C. § 2254(b); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Landano v. Rafferty*, 897 F.2d 661, 670-71 (3d Cir. 1990); *Gibson v. Scheidemantel*, 805 F.2d 135, 139 (3d Cir. 1986). Chambers did not present any of his claims to the state supreme court in a direct appeal; nor did he file any state

postconviction motions. *See generally* Crim. Dkt. Thus, Chambers' claims are unexhausted. *See Scheidemantal*, 805 F.2d at 139; *McLaughlin v. Carroll*, 270 F. Supp. 2d 490, 511 (D. Del. 2003) (citing *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)).

Ordinarily, a failure to exhaust a claim results in dismissal of the habeas petition, *Rose v. Lundy,* 455 U.S. 509 (1982), or a stay of the federal habeas proceedings to allow the prisoner to exhaust state court remedies (*Rhines v. Weber*, 544 U.S. 269 (2005)). If, however, there is no available state remedy, then Chambers is excused from the exhaustion requirement. *See Teague v. Lane*, 489 U.S. 288, 298 (1989); *Castille*, 489 U.S. at 351-52; *Lines*, 208 F.3d at 160. Chambers cannot now appeal his conviction or sentence, because the time for appeal has passed. *See* DEL. CODE ANN. TIT. 10, § 147; DEL. SUPR. CT. R. 6(a)(ii). Any appeal would be dismissed as being untimely. *E.g., Eller v. State*, 531 A.2d 951 (Del. 1987). If Chambers now tried to raise his claims in state court in a postconviction motion, the claims would be barred under Superior Court Criminal Rule 61(i)(3), because Chambers failed to appeal following his conviction and sentencing. *See, e.g., McLaughlin*, 270 F. Supp. 2d 490 at 512-13.

Thus, because there is no available state remedy, Chambers is excused from the exhaustion requirement. *See Teague*, 489 U.S. at 297-98; *Castille*, 489 U.S. at 351-52; *Lines*, 208 F.3d at 160; *Clark v. Pennsylvania*, 892 F.2d 1142, 1146-47 (3d Cir. 1989); *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 454 (D. Del. 1998); *Dawson v. Snyder*, 988 F. Supp. 783, 804 (D. Del. 1997). Although deemed exhausted, such claims are still considered to be procedurally barred. *Lines*, 208 F.3d at 160. Thus, because Chambers procedurally defaulted his claims in the state courts, federal habeas review is barred unless he establishes cause for his procedural default in the state courts and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review his claims. *See Coleman*, 501 U.S. at 750-51; *McCandless v.*

3

*Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Caswell v. Ryan*, 953 F.2d 853, 861-62 (3d Cir. 1992); *McLaughlin*, 270 F. Supp. 2d at 513. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense" precluded his compliance with state procedural rules. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991); *Murray v. Carrier*, 477 U.S. 478, 487 (1986). To establish prejudice under the cause and prejudice standard, a petitioner must show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Carrier*, 477 U.S. at 493-94 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982).

Chambers has failed to allege cause for his failure to appeal his conviction to the Delaware Supreme Court, and the claims can be dismissed on that basis alone. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *McLaughlin*, 270 F. Supp. 2d at 501. In the absence of cause, this Court is not required to address the issue of prejudice. *McLaughlin*, 270 F. Supp 2d at 513. Moreover, the miscarriage of justice exception does not apply because Chambers has not alleged any facts to establish his actual innocence. *See Hubbard v. Pinchak,* 378 F.3d 333, 339-40 (3d Cir. 2004) (holding that, in order to establish actual innocence sufficient to demonstrate a miscarriage of justice, a petitioner must assert "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial.").

Even if the Court were to consider the question of actual prejudice, Chambers has failed to demonstrate prejudice. In the first instance, there is no evidence to support Chambers' contention that the State of Delaware violated the provisions of the Interstate Agreement on Detainers ("IAD"). Chambers was indicted in December 2003. Crim. Dkt. at Item 2. On June

14, 2004, a detainer was lodged against Chambers, who was incarcerated in Chester County, Pennsylvania. Chambers was returned to Delaware for arraignment on June 6, 2006. Crim. Dkt. at Item 18. Superior Court scheduled trial for July 13, 2006. Crim. Dkt. at Item 20. Defense counsel requested a continuance, however, and the trial was rescheduled for September 21, 2006. Crim. Dkt. at Items 23 & 24. Under the Interstate Agreement on Detainers, a prisoner against whom a detainer has been lodged is entitled to be brought to trial within 180 days after delivery of written notice of demand to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction. DEL. CODE ANN. TIT. 11, § 2542(a) (2001). Under § 2542, written notice requesting final disposition of untried charges "shall not be deemed to have been caused to be delivered to the prosecuting officer . . . until such notice or notification has actually been received…." DEL. CODE ANN. TIT. 11, § 2542(g) (2001). Chambers contends that he served Pennsylvania prison officials with his demand for disposition of his Delaware charges "on or about June 2004." D.I. 5 at ¶2. However, Chambers' request, dated January 17, 2006, was not received by Delaware prosecutors until January 25, 2006. *See* Letter from Patricia F. Thompson, Records Specialist II, Pennsylvania Department of Corrections, to Carl C. Danberg, Attorney General (Jan. 18, 2006) with attachments. Thus, Chambers' 180-day period did not begin to run until January 26, 2006, when Delaware officials received actual notice of Chambers' demand. *See* DEL. CODE. ANN. TIT. 11, § 2542(g) (2001); *Fex v. Michigan*, 507 U.S. 43 (1993); *Beebe v. Vaughn*, 430 F. Supp. 1220, 1223 (D. Del. 1977). Chambers' original trial date of July 13, 2006 was well within the 180 day period required by the IAD. The trial, however, was rescheduled to September 21 at the request of defense counsel. Crim. Dkt. at Item 23. Section 2542(a) provides that the court may grant any reasonable continuance for good cause shown in open court. DEL. CODE. ANN. TIT. 11, § 2542(a); *Bruce v. State*, 781 A.2d 544, 549-50 (Del. 2001). Defense

counsel requested the continuance due to a trial conflict. Crim. Dkt. at Item 23. Accordingly, Chambers, by agreeing to a trial date outside of the 180-day period, waived his speedy trial rights under the IAD. *See New York v. Hill*, 528 U.S. 110 (2000) (holding that defense counsel can effectively waive a defendant's right to be brought to trial on a specified date under the IAD). Thus, Chambers cannot establish prejudice, and this claim does not merit relief. *Cf. Casper v. Ryan,* 822 F.2d 1283 (3d Cir.1987) (violation of [IAD]'s requirement of trial within 180 days of request by detainee not "fundamental defect" warranting habeas relief).

In his second claim, Chambers asserts that Jasmine Pruden's "recantation" of her original statement to police warrants a new trial. D.I. 1 at ¶12B. Pruden, however, never testified at Chambers' trial, and her "affidavit" (D.I. 5 at Ex. A) is dated September 18, 2006, several days before Chambers' trial began on September 21. *See* Crim. Dkt. at Item 29. Chambers, acting *pro se*, could have called Pruden as a witness at trial. There is simply no basis in the record for Chambers' claim. Moreover, the existence of newly discovered evidence (assuming that Pruden was in fact "newly discovered') is not a ground for relief. *Townsend v. Sain*, 372 U.S. 293, 311 (1963).

Finally, Chambers' *Batson* claim is based entirely on his unsupported assertion that the City of Wilmington population is approximately seventy percent Caucasian and thirty percent minority, while his jury pool consisted of forty-one Caucasians and four African-Americans. D.I. 5 at ¶4. He states that his jury was comprised of twelve Caucasians and one Black alternate. *Id*. Chambers has not presented a sufficient basis for a claim for which any court could grant relief.[2]

---

[2] Though Chambers refers to *Batson v. Kentucky*, 476 U.S. 79 (1986), in this claim, he makes no reference to the exercise of a peremptory challenge by the prosecutor. Respondents thus read Chambers' papers to allege a violation of equal protection in the jury selection process.

An essential characteristic of an impartial jury is that the jury be drawn from a fair cross section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 526-31 (1975). The Equal Protection Clause of the Fourteenth Amendment requires the eradication of "racial discrimination in the procedures used to select the venire from which individual jurors are drawn." *Batson v. Kentucky,* 476 U.S. 79, 86 (1986). "[J]ury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Duren v. Missouri,* 439 U.S. 357, 363-64 (1979) (quoting *Taylor v. Louisiana,* 419 U.S. 522, 538 (1975)).

To prove a claim that the jury selection process was racially discriminatory, a defendant must first identify a constitutionally cognizable group, that is, a group capable of being singled out for discriminatory treatment. *See Castaneda v. Partida,* 430 U.S. 482, 494 (1977); *Duren,* 439 U.S. at 364. African-Americans are unquestionably a constitutionally cognizable group, and Chambers' claim thus passes this first step. *See, e.g., Batson,* 476 U.S. at 84; *Rose v. Mitchell,* 443 U.S. 545, 551 (1979). Second, to prove an equal protection violation, Chambers must show that the cognizable group was subject to "substantial underrepresentation" over a significant period of time. *See Castaneda,* 430 U.S. at 494. Finally, to prove an equal protection violation, Chambers must show that the procedure being used to select the jurors is "susceptible of abuse or is not racially neutral." *Castaneda,* 430 U.S. at 494.

Chambers fails to satisfy the second and third steps of the analysis. He has provided no evidence other than his unsupported determination of the population distribution of the City of Wilmington, while Chambers was tried by a New Castle County Superior Court jury selected from the county as a whole, not exclusively from the city. In addition, Chambers has failed to provide any studies showing that African-Americans have been underrepresented for a

7

significant amount of time. Moreover, the evidence does not convincingly demonstrate that the representation of African-Americans on the jury pool was unfair or unreasonable. *See, e.g., Ramseur v. Beyer*, 983 F.2d 1215, 1235 (3d Cir. 1992). Chambers has also not alleged that the procedure used to select the jury pool or the jury itself was not racially neutral. As a result, Chambers cannot establish that he would have been able to succeed on his equal protection claim in state court. As a result, Chambers cannot demonstrate prejudice and his claim must be dismissed.

## Conclusion

Based upon the Superior Court docket sheet, it appears that Chambers' criminal proceedings were recorded, but no transcripts have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.

For the foregoing reasons, the petition for a writ of habeas corpus should be dismissed without further proceedings.

/s/ Elizabeth R. McFarlan
Deputy Attorney General
Del. Bar. ID No. 3759
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
elizabeth.mcfarlan@state.de.us

Date: May 31, 2007

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 31, 2007, I electronically filed an answer to a habeas petition with the Clerk of Court using CM/ECF. I also hereby certify that on May 31, 2007, I have mailed by United States Postal Service, the same documents to the following non-registered participant:

    Michael Chambers
    SBI No. 246261
    Young Correctional Institution
    P.O. Box 9561
    1301 East 12th Street
    Wilmington, DE 19809

    /s/ Elizabeth R. McFarlan
    Deputy Attorney General
    Department of Justice
    820 N. French Street
    Wilmington, DE 19801
    (302) 577-8500
    Del. Bar. ID No. 3759
    elizabeth.mcfarlan@state.de.us